The next case for argument is United States v. Woods. Mr. Gutierrez. Good morning, your honors. Mr. Zurr. Mr. Fullerton. May I please the court, Gerard Gutierrez on behalf of Bryce Woods. This is a fairly straightforward case. We presented evidence of post-conviction rehabilitation, post-defense rehabilitation I should say, and the district court was silent. As you know, the district court under Estrada Medeiros is required to adequately explain the chosen sentence to follow to allow for meaningful appellate review and to promote the perception of fair sentencing. In our case, our chief, if only, single mitigating argument was that Mr. Woods had essentially, since the date of his offense to the date of his conviction and sentencing, had really demonstrated that he had pretty much changed his life. Was he out on bond all that time? He was out on bond all that time. That's when he did this work for that other person that gave him all the compliments? Yes, sir. Okay. So, it's not much to argue really. It's pretty straightforward. If there's any questions, I'll rest on my briefs. Oh, I'm sorry. You finished your argument? Yes, your honor. Okay. Thank you. Thank you very much, Mr. Gutierrez. Mr. Zurr. May it please the court. Paul Zurr for the United States. The district court did not commit procedural error in sentencing defendant Bryce Woods to 70 months imprisonment. Contrary to Mr. Gutierrez's argument, the district court was well aware of the defendant's argument about his post-indictment job. And you can see it throughout the sentencing transcript. Defendant raised it in his sentencing memo also. During the sentencing hearing, the district court talked with the defendant about this precise argument. The district court acknowledged that she understood the locations overseas where the defendant had opportunities to work. The district court asked... Well, he wouldn't be allowed to leave the jurisdiction. No, he wasn't, your honor. And that's actually a point that the district court made. My only point is that contrary to the defendant's argument that the district court didn't consider this argument, the district court had an active colloquy with the defense about this particular argument. Okay. So that it's evidence that she didn't overlook the issue. Exactly right, your honor. Okay. And moreover, your honor, right after talking about the fact that he couldn't leave the district despite having these opportunities overseas, the district court asked the defense specifically what the job entailed. And Mr. Gutierrez gave a lengthy recitation about what the job involved. After that, the district court, listen to me, gave arguments about why despite Mr. Woods having this job, that shouldn't weigh in imposing the sentence, that the aggravating factors in this case far outweighed this potential mitigating factor. And so because of all of that, because of this colloquy that took place on the record just moments before the district court imposed sentence and gave her reasonings, it's clear from the record that the district court listened to the argument, understood the argument made by the defense, and considered it in deciding that the argument didn't carry water, that the sentence was appropriate, a sentence of 70 months. Well, we know that she considered mitigators because she said the only mitigating thing I see is the lack of a criminal record. Absolutely, your honor. So. And that's exactly the point. She clearly considered mitigating factors. And this point that the defense is making, that this was the only mitigating argument that he raised, that's just not the case. The defendant's main arguments in mitigation, and they came in the sentencing memo, and they came during oral argument, during argument at the sentencing hearing, were that he came to Chicago to study music, that he got roped into this scheme by his brother, William Woods, that he only went to nursing homes to play guitar for patients there at the direction of his brother and his co-defendant in this case, Dr. Kenan Farrell, that he was nothing more than a pizza manager from Iowa, and that he's the one who is taking the fall for the crimes of his brother. These were all arguments that the defendant made in mitigation. And to suggest that this argument that he was working at the time, of his indictment and the time of his sentencing in this case, was the only mitigating argument that he made, that's just not the case and it's not borne out by the record. It's not what he presented to the district court. And so in all these ways, the district court clearly considered this argument and clearly gave the one argument that he's making here the appropriate amount of consideration that it deserved. Was there a final figure or some figure of the amount of money in this fraud? Yes, Your Honor. And actually, that was the main point that the district court relied on in sentencing to 70 months, or one of the main points. As the government presented to the jury at trial and as the government presented again at the sentencing hearing, the actual loss to Medicare was over $1.5 million over the scope of a five-year fraud. The amount sought by the two defendants, Dr. Farrell and Mr. Gutierrez's client, Bryce Woods, was approximately $3.45 million. So this was a huge fraud. The fraud lasted for over five years. And in terms of the actual crime, the main crime was billing Medicare under one specific psychotherapy code. It was code 90818. And Mr. Gutierrez's client was the one responsible for submitting those bills. Bryce Woods submitted, in that five-year period, over 30,000 individual claims to Medicare seeking this money. Not one of those claims was for an accurate, a truthful psychotherapy session. They were all lies. Of course, the problem there is the damage done to those patients. I'm sorry, Your Honor? The damage done to those patients. The damage done, it was argued in the district court, Your Honor. It was that these patients weren't actually getting real psychotherapy services, real mental health services. That was a significant point to the district court in posing this sentence. These were patients at nursing homes. Many of the patients had dementia, Alzheimer's, things of that sort. And so these were some of the most vulnerable patients out there. They couldn't cry out that they weren't receiving the services that they needed. Is there any information in the record about this company, American Leaders, that he got his rehabilitative job in? None from the government, Your Honor. I know of the existence of the company. I know what Mr. Gutierrez represented to the district court regarding what Mr. Woods' job was at the company. He was assisting in presenting presentations at large conferences. But what exactly American Leaders did or who its clients were, I don't remember anything in the record about it. Unless Your Honors have any... I suppose a person who commits fraud is probably good at making presentations. That's distinctly possible, Your Honor. And it's not a thought that... That's definitely a thought that crossed my mind as well over the course of this scheme. And it certainly... How did they get access to these nursing homes and the patients? Are they brought in as independent contractors by the nursing home operators? How does that exactly happen? Yes, Your Honor. So the way it worked and the way it was described at trial, Dr. Farrell and Bryce Woods held themselves out as managers of two companies that were owned by Dr. Farrell, Take Action and InterArts, and they contracted with various nursing homes throughout the state of Illinois as being able to provide Medicare-covered psychotherapy services to mental health patients at these nursing homes. Right, but is there no oversight by the state for quality control and credentialing purposes? I thought this was a heavily regulated industry. It is a regulated industry, Your Honor, and that was part of the fraud. Dr. Farrell held himself out, as true as being a licensed clinical psychologist, he was. The problem with the fraud was that he was never going to the nursing homes to see patients, and that's where there was a shortfall. That's where there was a problem with that. Right, but the nursing staff on site isn't blowing the whistle and saying, we've just got a guy playing guitar here, he's not doing anything other than that? We had some of the nursing home administrators come in and testify about how they called to Dr. Farrell and said this is a problem, this is an issue, but regarding calling the state to try to blow the whistle and stop this, no one did. Are these Title XIX facilities in the main, or are they private-paying clients? That I don't know, and I certainly know that nothing like that was in the record. It doesn't make any difference, it's just a curiosity about how rampant this sort of thing is. This is what you do, right? It's one of the things I do. That's correct, Your Honor. It's not my only case, and obviously not my only case in this case. I was in front of Your Honor's and Dr. Farrell's appeal some months ago. Unless this Court has any additional questions, the government asks this Court to affirm the judgment of the district court. Okay, thank you, Mr. Zurs. Thank you. Mr. Gutierrez? I just wanted to clarify something that Mr. Zurs said. The mitigation that he talks about, about whether or not he was a lead or organizer, that went to the sentencing guidelines, and we are not disputing that the Court got the sentencing guideline correct. Our only argument in mitigation was indeed the fact that he had shown that he had changed his life around, that he was a different person being sentenced. Thank you, Judge. Well, wait a minute. Before you say he changed his life around, how different is his job for American leaders from his job, his illegal act job?  Pardon? Organizational as opposed to going out with his brother who was a licensed clinician and whose brother told Mr. Woods, listen, I think it would be beneficial to my patients if you came out and played guitar for them. And recall, Mr. Woods was a trained baritone. He was a professional musician. He had gotten his master's degree in music. And so when his older brother said, I think it would be beneficial if you came out and sang and played guitar to my patients, Mr. Woods had no reason to doubt his older brother, who was a licensed clinician. So I argued that to the District Court, and the District Court rejected that argument, which is fine. I don't have a problem with that. I do have a problem, however. I do have a problem when my only legally recognized argument went forward sub silencio. Not even, Mr. Gutierrez, I'm going to reject that because X, Y, and Z. This is a court of review. The court of review asked the District Court, please at least make some comment as to why you're not even giving a hint of weight to counsel's argument. Okay, well thank you very much to both counsel.